IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OPTIMORPHIX, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-1065 (MN) |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT GOOGLE LLC'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

OF COUNSEL:

Douglas E. Lumish
Linfong Tzeng
LATHAM & WATKINS LLP
140 Scott Drive
Silicon Valley, CA  94025
(650) 328-4600

Patricia Young
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Rachel Weiner Cohen
Sami K. Al-Marzoog
Ashley N. Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C., 20004
(202) 637-2200

Amit Makker
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

January 8, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

I.      NATURE AND STAGE OF PROCEEDINGS ................................................................1

II.     SUMMARY OF ARGUMENT ......................................................................................2

III.    STATEMENT OF FACTS .............................................................................................4

        A.     Asserted Patents ................................................................................................4

        B.     Direct Infringement Allegations .......................................................................4

        C.     Induced and Willful Infringement Allegations .................................................7

               1.     Knowledge of the Patents ......................................................................7

               2.     Knowledge of or Intent to Induce Infringement ...................................8

               3.     Knowledge of or Intent to Infringe .......................................................8

IV.     LEGAL STANDARDS ..................................................................................................9

        A.     Motion to Dismiss Under Rule 12(b)(6) ...........................................................9

        B.     Direct Infringement ...........................................................................................9

        C.     Induced and Willful Infringement ...................................................................10

V.      ARGUMENT ...............................................................................................................11

        A.     OptiMorphix's Direct Infringement Claims Should Be Dismissed .................11

        B.     OptiMorphix's Induced and Willful Infringement Claims Should Be
               Dismissed ........................................................................................................15

               1.     OptiMorphix Fails to Plausibly Allege Google Had Knowledge of
                      the Asserted Patents ............................................................................15

               2.     OptiMorphix Fails to Plausibly Allege Google Specifically
                      Intended to Induce Infringement .........................................................18

               3.     OptiMorphix Fails to Plausibly Allege Google Had Knowledge of
                      Infringement or Intent to Infringe .......................................................19

VI.     CONCLUSION.............................................................................................................20

TABLE OF AUTHORITIES

Page(s)

**CASES**

*Apeldyn Corp. v. AU Optronics Corp.*,
   831 F. Supp. 2d 817 (D. Del. 2011)......................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................................9

*B# on Demand LLC v. Spotify Tech. S.A.*,
   484 F. Supp. 3dd 188 (D. Del. 2020)...................................................................10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................9, 12

*Bench Walk Lighting LLC v. LG Innotek Co.*,
   530 F. Supp. 3d 468 (D. Del. 2021)....................................................................10

*Boston Sci. Corp. v. Nevro Corp.*,
   415 F. Supp. 3d 482 (D. Del. 2019)....................................................................20

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ..................................................................... *passim*

*Bot M8 LLC v. Sony Corp. of Am.*,
   No. C. 19-07027 WHA, 2020 WL 418938 (N.D. Cal. Jan. 27, 2020),
   *aff'd in part, rev'd in part and remanded*, 4 F.4th 1342 (Fed. Cir. 2021)............................12

*Commvault Sys., Inc. v. Rubrik Inc.*,
   C.A. No. 20-524 (MN), D.I. 42 (D. Del. Feb. 10, 2021) ........................................10

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018)........................................................................13

*DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
   C.A. No. 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018)......................3, 4, 11, 19

*Dynamic Data Techs. v. Google LLC*,
   C.A. No. 19-1529-CFC, 2020 WL 1285852 (D. Del. Mar. 18, 2020)*, report
   and recommendation adopted*, 2020 WL 3103786 (D. Del. June 11, 2020).........................19

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*,
   C.A. No. 14-430-LPS-CJB, 2015 WL 5725768 (D. Del. Sept. 29, 2015).............................17

*Erickson v. Pardus*,
   551 U.S. 89 (2007)......................................................................................9, 15

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)............................................................................................11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016)........................................................................................9, 20

*iFIT Inc. v. Peloton Interactive, Inc.*,
    C.A. No. 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022) ........................17

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
    C.A. No. 16-134-GMS, 2017 WL 1312942 (D. Del. Apr. 5, 2017)........................19

*James v. City of Wilkes-Barre*,
    700 F.3d 675 (3d Cir. 2012)............................................................................9, 12

*Kajeet, Inc. v. Gryphon Online Safety, Inc.*,
    C.A. No. 19-2370 (MN), D.I. 36 (D. Del. Mar. 1, 2021) ..................................11, 12

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017).........................................................................10, 19

*Malvern Panalytical Ltd. v. Ta Instruments-Waters LLC*,
    C.A. No. 19-2157-RGA, 2021 WL 3856145 (D. Del. Aug. 27, 2021)..................11, 19, 20

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
    No. 1-18-CV-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)................................16

*Modern Telecom Sys., LLC v. TCL Corp.*,
    C.A. No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ........................14, 15

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012)....................................................................11

*NNCrystal U.S. Corp. v. Nanosys, Inc.*,
    C.A. No. 19-1307-RGA, 2022 WL 1091283 (D. Del. Apr. 12, 2022) ....................17

*OptiMorphix v. Cisco Sys., Inc.*,
    No. 5:23-cv-00126-RWS-JBB (E.D. Tex.)............................................................2

*OptiMorphix, Inc. v. Amazon.com, Inc.*,
    No. 5:23-cv-00123-RWS-JBB (E.D. Tex.)............................................................2

*OptiMorphix, Inc. v. Broadcom Inc.*,
    No. 5:23-cv-00134-RWS-JBB (E.D. Tex.)............................................................2

*OptiMorphix, Inc. v. Microsoft Corp.*,
    No. 5:23-cv-00150-RWS-JBB (E.D. Tex.)............................................................2

*OptiMorphix, Inc. v. Oracle Corp.*,
    C.A. No. 23-1249 (MN) (D. Del.) ........................................................................2

*OptiMorphix, Inc. v. VMWare, Inc.*,
    C.A. No. 23-1146 (MN) (D. Del.) ........................................................................2

*PPG Indus. Ohio, Inc. v. Axalta Coating Sys., LLC*,
    C.A. No. 21-346-LPS-SRF, 2022 WL 610740 (D. Del. Jan. 26, 2022), *report
    and recommendation adopted*, 2022 WL 611260 (D. Del. Feb. 18, 2022) ...........................18

*Princeton Digital Image Corp. v. Ubisoft Ent. S.A.*,
    C.A. No. 13-335-LPS-CJB, 2017 WL 6337188 (D. Del. Dec. 12, 2017) ..............3, 10, 16, 17

*Princeton Digital Image Corp. v. Ubisoft Ent. SA*,
    C.A. No. 13-335-LPS-CJB, 2016 WL 6594076 (D. Del. Nov. 4, 2016*)* ..............................17

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
    C.A. No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018)...............................12, 13

*Robocast, Inc. v. Netflix, Inc.*,
    640 F. Supp. 3d 365 (D. Del. 2022).........................................................10, 11, 16

*Robocast, Inc. v. YouTube, LLC*,
    C.A. No. 22-304-RGA, 2022 WL 16922035 (D. Del. Nov. 14, 2022)..................................20

*Spherix Inc. v. Juniper Networks, Inc.*,
    C.A. No. 14-578-SLR, 2015 WL 1517509 (D. Del. Mar. 31, 2015)....................................16

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) ........................................................................20

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)........................................................................17

*Stragent, LLC v. BMW of N. Am., LLC*,
    C.A. No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3,
    2017) ................................................................................................14

*Super Interconnect Techs. LLC v. HP Inc.*,
    C.A. No. 19-0169-CFC, 2019 WL 6895877 (D. Del. Dec. 18, 2019)..............................14, 15

*Web 2.0 Techs., LLC v. Accelo, Inc.*,
    C.A. No. 23-001 (MN), D.I. 17 (D. Del. Oct. 5, 2023) ...........................................10

*Web 2.0 Techs., LLC v. Zendesk, Inc.*,
    C.A. No. 23-105 (MN), D.I. 27 (D. Del. Oct. 5, 2023) ...........................................13

*Wrinkl, Inc. v. Facebook, Inc.*,
  C.A. No. 20-cv-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021) ............................20

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
  528 F. Supp. 3d 257 (D. Del. 2021)...........................................................................................20

## STATUTES

35 U.S.C. § 284.......................................................................................................................................9

## RULES

Fed. R. Civ. Proc. 12(b)(6) ...............................................................................................................2, 9

## I.     NATURE AND STAGE OF PROCEEDINGS

On September 27, 2023, Plaintiff OptiMorphix, Inc. ("OptiMorphix") filed a Complaint against Defendant Google LLC ("Google") alleging direct, induced, and willful infringement of 14 patents it acquired in April 2023: U.S. Patent Nos. 7,099,273 ("'273 patent"); 7,444,418 ("'418 patent"); 7,031,314 ("'314 patent"); 7,586,871 ("'871 patent"); 7,616,559 ("'559 patent"); 9,275,167 ("'167 patent"); 9,191,664 ("'664 patent"); 7,987,285 ("'285 patent"); 7,991,904 ("'904 patent"); 8,230,105 ("'105 patent"); 8,769,141 ("'141 patent"); 10,412,388 ("'388 patent"); 8,429,169 ("'169 patent"); and 9,167,021 ("'021 patent") (collectively, the "asserted patents"). D.I. 1 ("Compl.").  But OptiMorphix does not even attempt to map the 13 accused products to the asserted claims, instead relying on conclusory statements, rote recitations of claim language, and blending features of separate products to manufacture an air of infringement.  For some patents, OptiMorphix merely lists a product name without setting forth any factual basis for infringement.  For others, OptiMorphix makes allegations inconsistent with infringement.  These allegations do not support a plausible claim of direct infringement.

OptiMorphix's allegations for induced and willful infringement fare no better.  For the 11 asserted patents for which the complaint alleges pre-suit notice, OptiMorphix fails to identify any actual or constructive notice.  OptiMorphix instead relies on mere citations to the asserted patents, their publications, or family members in, for example, a notice listing many references filed by the examiner during the prosecution of patent applications only later assigned to Google.  Such a tenuous link is insufficient to allege pre-suit knowledge, much less intent to infringe.  Any separate allegations regarding intent are similarly deficient—consisting of bare, non-specific allegations that Google's infringement is "willful" and referring to general "marketing materials" and product websites without more.  OptiMorphix, therefore, has not stated a claim upon which relief may be granted; nor can it properly.  Accordingly, Google respectfully moves to dismiss the complaint

under Rule 12(b)(6).

## II.   SUMMARY OF ARGUMENT

OptiMorphix fails to adequately plead direct, induced, or willful infringement.  Because the complaint relies on allegations that are conclusory, lack sufficient factual support, fail to put Google on fair notice of its claims, and are comparable to allegations that courts have regularly found to be insufficient, OptiMorphix's complaint should be dismissed in its entirety.

Perhaps unsurprising given that OptiMorphix has asserted more than a dozen patents against seven defendants[1] in quick succession, the complaint against Google suffers from fatal defects, including: (1) simply parroting (or rephrasing) the claim language (*e.g.*, Compl. ¶¶ 160-65); (2) pointing to activity that, on its face, does not map to the claim language (*e.g.*, *id.* ¶¶ 262-263); (3) citing to conduct that contradicts OptiMorphix's infringement theory (*e.g.*, *id.* ¶¶ 138, 338); (4) making broad allegations that are not tied to any particular accused product (*e.g.*, *id.* ¶¶ 124-140); and (5) mixing and matching features of different accused products (*e.g.*, *id.* ¶¶ 287-289).  For some claims, the complaint fails to set forth any allegations related to the features or functions of any specific product.  *Id.* ¶¶ 124-140, 315-321, 413-427.  The result of these pervasive deficiencies is that the complaint does not provide Google with fair notice that any accused product directly infringes any asserted claim of any of the 14 asserted patents.  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354-55 (Fed. Cir. 2021) (finding allegations insufficiently pleaded when they are "conclusory," "merely track the claim language," or are "inconsistent with and contradict infringement").

---

[1]  To date, in addition to this case: *OptiMorphix, Inc. v. Oracle Corp.*, C.A. No. 23-1249 (MN) (D. Del.); *OptiMorphix, Inc. v. VMWare, Inc.*, C.A. No. 23-1146 (MN) (D. Del.); *OptiMorphix, Inc. v. Microsoft Corp.*, No. 5:23-cv-00150-RWS-JBB (E.D. Tex.); *OptiMorphix, Inc. v. Amazon.com, Inc.*, No. 5:23-cv-00123-RWS-JBB (E.D. Tex.); *OptiMorphix, Inc. v. Broadcom Inc.*, No. 5:23-cv-00134-RWS-JBB (E.D. Tex.); *OptiMorphix v. Cisco Sys., Inc.*, No. 5:23-cv-00126-RWS-JBB (E.D. Tex.).

Moreover, the complaint fails to plead sufficient facts to establish pre-suit knowledge of the patents, knowledge of infringement, or specific intent to infringe or induce infringement, as required to maintain OptiMorphix's claims of induced and willful infringement.  In support of these claims, OptiMorphix purports to allege pre-suit knowledge of 11 of the 14 asserted patents.[2] But none of these allegations plausibly suggests that Google had such knowledge.  OptiMorphix does not (and cannot) allege any pre-suit notice and instead relies on mere citations to the asserted patents, corresponding patent applications, or family members during the prosecution of applications assigned to Google.  *E.g.*, Compl. ¶¶ 201-202, 277-288.  These allegations sweep in citations within long lists of art submitted by the examiner and citations during the prosecution of applications Google acquired years after issuance.  Such allegations are legally insufficient to sustain claims of induced and willful infringement.  *Princeton Digital Image Corp. v. Ubisoft Ent. S.A.*, C.A. No. 13-335-LPS-CJB, 2017 WL 6337188, at *1 (D. Del. Dec. 12, 2017) (finding that a defendant's citation to an asserted patent during prosecution is "generally not sufficient").

The complaint does not even contend Google had the requisite knowledge of infringement or intent to infringe, as required for both induced and willful infringement, much less provide any factual basis.  For induced infringement, OptiMorphix alleges (for every patent) only that Google "provides documentation and training materials that cause customers and end users [] to utilize the products in a manner that directly infringe[s.]"  *E.g.*, Compl. ¶ 148.  The complaint does not link any cited documents to Google, much less identify "any particular statement or material that plausibly suggests" Google intended to induce infringement.  *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, C.A. No. 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018).  And, for willfulness, the complaint merely states (for every patent) that "Google is

---

[2] The '273, '418, '314, '559, '285, '904, '871, '167, '664, '105, and '141 patents.

infringing the [] patent in a manner best described as willful[.]"  *E.g.*, Compl. ¶ 149.

The complaint should be dismissed in its entirety.

## III.  STATEMENT OF FACTS

### A.  Asserted Patents

OptiMorphix alleges that Google infringes at least one claim of each of the 14 asserted patents, which relate in broad terms to: managing and processing network data (Compl. ¶¶ 19-20, 36-37, 43-45, 57-58), network communication links (*id.* ¶¶ 50-51), transcoding multimedia transmissions (*id.* ¶¶ 30-32, 102), video caching (*id.* ¶¶ 109-110), managing bitrates for media transmissions (*id.* ¶¶ 64-65, 72-73, 80-81, 87-88, 96-97), and measuring web page download times (*id.* ¶¶ 116-118).  OptiMorphix acquired these patents in April 2023 and did not provide Google with pre-suit notice of any of the patents.

### B.  Direct Infringement Allegations

For all 14 claims of direct infringement, the complaint simply parrots the language of the asserted claims or slightly rephrases claim language to make conclusory assertions that the products practice key limitations.  *See* Compl. ¶¶ 135-36, 139, 160-65, 183-188, 190-193, 210-213, 216, 218, 236-239, 241-246, 264-270, 290-292, 293-296, 316-318, 339-340, 344-345, 366-372, 394, 396-399, 417-424, 444, 447, 452, 462, 467, 472, 474, 476-477.

Where OptiMorphix does provide citations, such allegations are still facially deficient.  For eight asserted patents (the '418, '167, '664, '285, '904, '105, '141, and '169 patents), the allegations on their face fail to plausibly allege infringement.  For example, asserted claim 23 of the '418 patent requires "intercepting digital multimedia information communicated between a transmitter and a receiver, the digital multimedia information encoded at the transmitter at a first transmission rate."  But the only "factual basis" OptiMorphix provides is a screenshot that the underlying webpage describes as a high level "overview" of "live sharing" with no apparent

relationship to interception or encoding (nor is there one). Compl. ¶ 156. Similarly, asserted claim 14 of the '167 patent requires "identifying content sections during traversal of a first Document Object Model (DOM) representing a webpage." But OptiMorphix's citations consist of a barely-legible screenshot that purports to relate to "optimization of AMP pages" and an excerpt from a separate document that refers to removing metadata and converting image file formats—there is no mention of a DOM or what OptiMorphix alleges is a DOM, let alone traversal of one. Compl. ¶¶ 262-263. The asserted claims of the '664, '285, '904, '105, and '141 patents require "receiving an optimal session bitrate" and "allocating the optimal session bitrate between audio and video media" but the citations consist of: a protocol printout that OptiMorphix does not attempt to relate to the claim limitations (*id.* ¶¶ 292, 338, 368), a flowchart containing black box audio and video buffers and decoders (*id.* ¶ 316), and a general reference to the MPEG-DASH standard without relating that standard to the elements of the claim (*id.* ¶ 395). *See also id.* ¶¶ 235, 240 (allegations related to a general "health check" and "forwarding rules" where asserted claim requires "a first [and second] communications link with a first [and second] security" and also "linking to one of [two] communications link[s]" for "connectivity"); *id.* ¶¶ 425-426 (referencing the HEVC standard without specificity); *id.* ¶¶ 443, 445-446 (allegations related to URL syntax and "metadata" where the asserted claim of the '169 patent requires, *inter alia*, "generating an index corresponding to content" and "characterization data [that] comprises the portion of content").

For four asserted patents (the '273, '904, '871, and '388 patents), OptiMorphix's allegations actually contradict a finding of infringement. The complaint alleges that the accused products do *not* use "a specific parameter for the maximum number of unacknowledged packets" as expressly required by asserted claim 1 of the '273 patent (*id.* ¶ 138) and identifies "rrtr" (part of an RTP or real-time transport protocol) for the entirely different "transport control protocol

(TCP)" required by claim 11 of the '904 patent (*id.* ¶ 338).  *See also* Compl. Ex. 9 at 1:29-67 ('904 patent describing RTP and TCP as "different mechanisms").  Asserted claim 1 of the '871 patent requires allowing data "to pass through the node" and to another network "without processing," which is incongruous with the feature of the accused products OptiMorphix highlights—detecting malicious spyware to "safeguard against threats that penetrate the network."  *Id.* ¶ 217.  And for asserted claim 1 of the '388 patent, the complaint alleges (albeit in a conclusory way) that a "previously decoded frame" is the claimed "decoded frame" that the method is ultimately directed to "encoding."  *Id.* ¶ 417.  But, for the remaining limitations, the complaint refers generally to encoding, including "a first GP (QP1) to be identified before *any* encoding can occur."  *Id.* ¶¶ 418, 425-426 (emphasis added).

The complaint also does not attempt to map certain accused products at all.  OptiMorphix identifies "Google Cloud Platform (GCP) (including Google Cloud Storage, Google Compute Engine, Google Cloud CDN, and Google Cloud Application Load Balancer); YouTube.com; and Google Meet" as the accused products for the '273 patent, *id.* ¶ 124, but does not set forth any allegations that any particular accused product satisfies any limitation of the asserted claim, much less explain how.  And for the '871, '285, and '388 patents, the complaint omits allegations regarding a subset of the accused products.  *Id.* ¶¶ 214-218 (no allegations for Internal passthrough Network Load Balancer or External Network Load Balancer), 315-321 (no allegations for Google Meet), 413-427 (no allegations for Google Chromecast Ultra, Google Cast, or "Android 12 and later versions").  For the '314, '418, '559, '664, and '105 patents, the complaint plucks out features loosely related to one product for certain limitations and a different product for others—never articulating why it is plausible that any (much less each) accused product infringes the asserted claims.  *Id.* ¶¶ 156, 158, 189, 191, 194, 234-246, 287-289, 292, 368, 370, 373.

The result is an overall lack of factual allegations that, even if taken as true, fail to articulate why it is plausible that any accused product infringes any asserted claim. *Bot M8*, 4 F.4th at 1353.

## C.     Induced and Willful Infringement Allegations

### 1.     Knowledge of the Patents

In support of its claims for induced and willful infringement, OptiMorphix alleges that Google was aware of the asserted patents prior to the filing of the complaint for 11 of the 14 asserted patents (the '273, '418, '314, '559, '285, '904, '871, '167, '664, '105, and '141 patents). For the remaining three patents (the '388, '169, and '021 patents), OptiMorphix alleges knowledge based only on the complaint itself.

For the 11 patents for which OptiMorphix alleges pre-suit knowledge, the complaint relies on three categories of allegations: (1) citation to the asserted patent within long lists of prior art, (2) citation to the application that would issue as an asserted patent, and (3) citation to a family member of an asserted patent. OptiMorphix relies on the first category for knowledge of the '273, '418, '314, '559, '285, and '904 patents, alleging that "Google has had knowledge of the [] patent . . . based on its citation of the [] patent as relevant prior art" in certain patents and patent applications "owned by Google." Compl. ¶¶ 146, 174, 201, 253, 328, 354. But the complaint does not set forth any factual basis for how these passing citations demonstrate *Google's* knowledge of the specific asserted patents. Nor could it. For example, the identified citations include listing an asserted patent among dozens of others in an Information Disclosure Statement or an Examiner's Notice of References Cited. *E.g.*, U.S. Patent No. 9,560,392 (*id.* ¶ 354); U.S. Patent App. No. 2020/0412658 (*id.* ¶ 146). Other identified citations were made during prosecution of patent applications Google did not own at the time of the citation, but which it acquired later, after issuance of the applications as patents. *E.g.*, U.S. Patent No. 8,897,753 (*id.* ¶ 253).

OptiMorphix's allegations of pre-suit knowledge for other asserted patents are even further

removed from *Google's* knowledge of the *patents*.  For the '871 and '167 patents, the complaint alleges knowledge of the asserted patent based only on citations to the preceding application (*id.* ¶¶ 225, 277) and for the '664, '105, and '141 patents, the complaint alleges knowledge based only on citations to family members (*id.* ¶¶ 305, 381, 406).  These strained allegations further suffer from the same weaknesses described above, including citations during the prosecution of patents Google did not own until years later.  *E.g.*, U.S. Patent App. No. 2010/0306373 (*id.* ¶ 305).

### 2.      Knowledge of or Intent to Induce Infringement

The complaint relies on a formulaic paragraph to allege that Google knowingly and intentionally induced others to infringe each asserted patent.  That repeated paragraph alleges, in a conclusory manner, that Google: "had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that the inducing acts would cause infringement," "specifically intended and was aware that the normal and customary use of the accused products would infringe," and "performed the acts that constitute induced infringement." Compl. ¶¶ 148, 175, 203, 226, 254, 279, 306, 330, 356, 382, 407, 433, 459.  Beyond reciting the elements of an induced infringement claim, the complaint alleges that Google "provides documentation and training materials" to induce infringement.  *Id.*  In footnotes, the complaint lists product guides, informational presentations, white papers, videos, and blogs, but does not identify any particular instruction or direction suggesting Google specifically intended to induce infringement.  OptiMorphix fails to plausibly allege the requisite knowledge or intent to infringe for its induced infringement claims.

### 3.      Knowledge of or Intent to Infringe

Similarly, OptiMorphix does not allege, even in a conclusory manner, facts to show that Google knowingly or intentionally infringed as required for a claim of willful infringement. Rather, for each and every asserted patent, the complaint alleges only that "Google is infringing

the [] patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate."  Compl. ¶¶ 149, 176, 204, 227, 255, 280, 307, 331, 357, 383, 408, 434, 460.  On its face this pleading is devoid of facts and merely restates a legal standard—indeed, it recites the *wrong* legal standard by parroting the Supreme Court's test in *Halo* for *enhanced damages* under 35 U.S.C. § 284, and not the legal standard for willful infringement.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016).  This lack of any factual allegations relating to knowledge of infringement or intent to infringe warrants dismissal of OptiMorphix's willful infringement claims.

## IV.  LEGAL STANDARDS

### A.  Motion to Dismiss Under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face if it contains sufficient facts to support a "reasonable inference" of liability.  *Id.*  If the pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," dismissal is warranted.  *Id.* at 679.  Although "specific facts are not necessary," the complaint should provide "fair notice of what the claim is and the ground upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up).  The court accepts well-pleaded factual allegations but "disregard[s] rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."  *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

### B.  Direct Infringement

For direct infringement allegations to satisfy the pleading standard, the plaintiff must allege sufficient facts to "articulate why it is plausible that the accused product infringes the patent claim."  *Bot M8*, 4 F.4th at 1353.  Allegations that are "conclusory," "merely track the claim

9

language," do not "plausibly allege" that the accused product meets key limitations, or are "inconsistent with" infringement are insufficient. *Id.* at 1354-55. As this Court has explained, a patentee can meet the pleading standard "by specifically identifying accused products, alleging that those products meet all the limitations of certain identified claims" and provide "an attempt to map those products onto the asserted claim limitations." *Commvault Sys., Inc. v. Rubrik Inc.*, C.A. No. 20-524 (MN), D.I. 42 (D. Del. Feb. 10, 2021); *cf. Web 2.0 Techs., LLC v. Accelo, Inc.*, C.A. No. 23-001 (MN), D.I. 17 (D. Del. Oct. 5, 2023).

## C.    Induced and Willful Infringement

For both induced and willful infringement, a plaintiff must allege, *inter alia*, that the defendant had both knowledge of the asserted patents and knowledge of infringement. *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 491 (D. Del. 2021) (collecting cases). Failure to sufficiently plead either type of knowledge warrants dismissal.

With respect to knowledge of the asserted patents, dismissal is appropriate where the complaint lacks "any non-conclusory basis for pre-suit knowledge of any of the patents-in-suit." *B# on Demand LLC v. Spotify Tech. S.A.*, 484 F. Supp. 3dd 188, 206 (D. Del. 2020). Alleging "that a defendant cited or referenced a patent during prosecution" is generally insufficient to plead pre-suit knowledge of the patent. *E.g.*, *Princeton Digital*, 2017 WL 6337188, at *1.

In addition to knowledge of the patent, induced and willful infringement claims also require the plaintiff to plead knowledge of infringement or intent to infringe. For induced infringement, the complaint must allege that the defendant "specifically intended" another to infringe the asserted patent and also "knew" that those "acts constituted infringement." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). For willful infringement, the complaint must allege that the defendant knowingly or intentionally infringed. *Robocast, Inc. v. Netflix, Inc.*, 640 F. Supp. 3d 365, 371 (D. Del. 2022). To survive a motion to dismiss, the complaint must allege

"specific factual matter" demonstrating such knowledge and intent.  *E.g.*, *Malvern Panalytical Ltd. v. Ta Instruments-Waters LLC*, C.A. No. 19-2157-RGA, 2021 WL 3856145, at *3 (D. Del. Aug. 27, 2021) (dismissing induced and willful infringement).   General references to marketing materials or a defendant's website are generally insufficient to allege specific intent to maintain a claim of induced infringement.  *DoDots*, 2019 WL 6629709, at *4.  Although knowledge can be satisfied by "willful blindness," such a showing requires "affirmative actions taken by the defendant to avoid gaining actual knowledge of the patent-in-suit."  *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 230 (D. Del. 2012) (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) (willful blindness requires subjective belief "there is a high probability that a fact exists" and "deliberate actions to avoid learning of that fact")).

## V.    ARGUMENT

OptiMorphix fails to identify factual bases to support a plausible claim of direct, induced, or willful infringement.

### A.    OptiMorphix's Direct Infringement Claims Should Be Dismissed

OptiMorphix fails to allege sufficient facts to adequately plead that Google directly infringes at least one claim of any asserted patent.  Where (as here) the patentee pleads conclusory recitations of the claim language, alleges facts that are unrelated to or inconsistent with the claim limitations, and declines to relate certain accused products to the claim limitations at all, claims for direct infringement cannot stand.  *Bot M8*, 4 F.4th at 1346, 1353-54.  And, "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Id.* at 1353.  As this Court has phrased it, there must be some "attempt to map the accused products onto the limitations of the asserted claims," a baseline OptiMorphix does not meet.  *E.g.*, *Kajeet, Inc. v. Gryphon Online Safety, Inc.*, C.A. No. 19-2370 (MN), D.I. 36, at 15 (D. Del. Mar. 1, 2021).

11

*First*, it is well-established that conclusory allegations cannot sustain a claim of direct infringement. *Bot M8*, 4 F.4th at 1352 (quoting *Twombly*, 550 U.S. at 555); *James*, 700 F.3d at 679. Yet OptiMorphix's complaint is riddled with mere recitations or restatements of the claim language that render each count insufficient. *See* Compl. ¶¶ 135-36, 139, 160-65, 183-188, 190-193, 210-213, 216, 218, 236-239, 241-246, 264-270, 290-292, 293-296, 316-318, 339-340, 344-345, 366-372, 394, 396-399, 417-424, 444, 447, 452, 462, 467, 472, 474, 476-477.

*Second*, where OptiMorphix does attempt to plead facts, those allegations still fail to provide Google with sufficient notice of direct infringement. The Federal Circuit's decision in *Bot M8* is instructive. There, one limitation of the asserted claims of the '990 patent "require[d] storing 'gaming information including a mutual authentication program' on the same memory." *Bot M8*, 4 F.4th at 1355. The plaintiff pointed to "different storage components in the allegedly infringing devices"—including naming specific hard drives, game discs, a server, and memory—but "never [said] which one or ones satisfy the mutual authentication limitation." *Id*. As the district court explained, the complaint merely identified product components, made conclusory allegations that the accused products met the limitations, and provided an image of a component without providing any "basis to infer *what* is stored on that drive." *Bot M8 LLC v. Sony Corp. of Am.*, No. C. 19-07027 WHA, 2020 WL 418938, at *2-3 (N.D. Cal. Jan. 27, 2020), *aff'd in part, rev'd in part and remanded*, 4 F.4th 1342 (Fed. Cir. 2021). Because the complaint did not provide any evidence of the additional requirement that gaming information and mutual authentication program "are stored *together*" it was dismissed. *Id.* at *3.

The complaint here offers similarly surface level allegations that do not explain "when or where," *Bot M8*, 4 F.4th at 1354, or "why" any limitations are met, *Promos Techs., Inc. v. Samsung Elecs. Co.*, C.A. No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018). As described

above, for eight of the asserted patents (the '418, '167, '664, '285, '904, '105, '141, and '169 patents), OptiMorphix provides screenshots of high-level documentation unrelated to the asserted claims and makes no effort to tie those screenshots back to the claim language. *E.g.*, *supra* at 4-5 (describing Compl. ¶¶ 156, 262-263, 292, 316, 338, 368, 395, 443, 445-446). This approach was also taken by the plaintiff in the *Web 2.0* cases, where this Court granted motions to dismiss all claims of direct infringement. *Web 2.0 Techs., LLC v. Zendesk, Inc.*, C.A. No. 23-105 (MN) ("*Zendesk*"), D.I. 27 at 5, 7 (D. Del. Oct. 5, 2023); *see generally Zendesk*, D.I. 1 (reciting claim limitations and excerpting high level documents without explanation).[3] And, unlike in *Disc Disease*, the technology is not so "simple" that merely identifying the products and providing high level information, such as "attaching photos of the product packaging," provides "fair notice of infringement." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018); *see also Bot M8*, 4 F.4th at 1353 (holding that "[t]he level of detail required . . . will vary" based on "the complexity of the technology . . . and the nature of the allegedly infringing device.").

*Third*, for the '273, '904, '871, and '388 patents, "the factual allegations are actually *inconsistent* with and contradict infringement," rendering them "insufficient to state a plausible claim." *Bot M8*, 4 F.4th at 1354. In *Bot M8*, claims of direct infringement were dismissed when the patentee alleged nonsensically that the accused product's motherboard somehow satisfied a claim limitation requiring that a feature be stored *separately* from a motherboard. *Id.* at 1353. As described *supra* at 5-6, the complaint here is similarly internally inconsistent. For claim 1 of the '273 patent, OptiMorphix alleges that the accused products do *not* satisfy the "specific parameter" limitation. Compl. ¶ 138. Similarly, the complaint illogically points to both a "previously decoded

---

[3] The complaints in the *Web 2.0* cases "recite[] substantially the same infringement allegations against each of the various defendants." *Zendesk*, D.I. 27, at 4. *Zendesk* is exemplary.

frame" and a newly encoded frame as the "decoded frame" required by claim 1 of the '388 patent. *Id.* ¶¶ 417-418, 425-426. Claim 1 of the '904 patent requires a "transport control protocol," but the complaint points only to a component of an entirely separate protocol: a real-time transport protocol. *Id.* ¶ 338; Compl. Ex. 9 at 1:29-67 ('904 patent describing RTP and TCP as "different mechanisms"). And, for the '871 patent, the complaint alleges, nonsensically, that malicious spyware is the claimed data allowed to "pass through the node" and to another network "without processing." Compl. ¶¶ 216-217. For these counts, OptiMorphix "has essentially pleaded itself out of court." *Bot M8*, 4 F.4th at 1354.

*Fourth*, for the '285 and '388 patents, the complaint identifies industry standards to connect the asserted claims and the accused products. As courts in this district have found, it is insufficient to reference a standard without factual allegations that connect the standard to asserted claims and the accused product. *Super Interconnect Techs. LLC v. HP Inc.*, C.A. No. 19-0169-CFC, 2019 WL 6895877, at *2 (D. Del. Dec. 18, 2019) (granting motion to dismiss); *see also Stragent, LLC v. BMW of N. Am., LLC*, C.A. No. 6:16-cv-446-RWS-KNM, 2017 WL 2821697, at *5 (E.D. Tex. Mar. 3, 2017) (granting motion to dismiss where the complaint did not "identif[y]" something akin to a "common formula" between the asserted claims and the standard and did not "explain how the accused products, by complying with the [standard], also infringe"). Here, as in *Modern Telecom*, OptiMorphix alleges only that "YouTube implements MPEG-DASH" to plead direct infringement of the '285 patent. Compl. ¶ 393; *see also id.* ¶¶ 391, 395. But a "bald allegation" that an accused product "operates pursuant to what the Complaint refers to as the 'relevant [standard]'" is "not enough." *Modern Telecom Sys., LLC v. TCL Corp.*, C.A. No. 17-583-LPS-CJB, 2017 WL 6524526, at *3 (D. Del. Dec. 21, 2017). Likewise, the allegations of direct infringement of the '388 patent list section titles from the HEVC standard. Compl. ¶ 425.

14

However, far from an "attempt . . . to connect" the standard to the accused products or asserted claims, *Super Interconnect*, 2019 WL 6895877, at *3, these titles merely contain a smattering of words from the claim alongside a vague assertion that these sections are "relevant," *Modern Telecom*, 2017 WL 6524526, at *5.  This does not give Google "fair notice" of its alleged direct infringement nor "the grounds upon which it rests."  *Erickson*, 551 U.S. at 93.

*Fifth*, at a minimum, OptiMorphix cannot maintain direct infringement claims for the '273, '418, '314, '559, '664, and '105 patents because the complaint presents no factual basis that any specific product infringes any asserted claim of these patents.  Compl. ¶¶ 124, 156, 158, 189, 191, 194, 234-246, 287-289, 292, 368, 370, 373 (no product-specific allegations).  Nor can OptiMorphix maintain direct infringement claims against certain products for which there are no allegations.  *Id.* ¶¶ 214-218 (no allegations for Internal passthrough Network Load Balancer or External Network Load Balancer), 315-321 (no allegations for Google Meet), 413-427 (no allegations for Google Chromecast Ultra, Google Cast, or "Android 12 and later versions").

### B.     OptiMorphix's Induced and Willful Infringement Claims Should Be Dismissed

Because OptiMorphix fails to sufficiently allege direct infringement, the complaint should be dismissed in its entirety.  However, should the Court reach the question for any count of infringement, OptiMorphix's claims for induced and willful infringement should be dismissed because OptiMorphix fails to plausibly allege that: (1) Google had the requisite knowledge of any asserted patent, or (2) Google had knowledge of infringement, intent to infringe, or specific intent to induce infringement.

### 1.     OptiMorphix Fails to Plausibly Allege Google Had Knowledge of the Asserted Patents

To allege pre-suit knowledge of the patents, OptiMorphix relies exclusively on mere citations during the prosecution of patent applications currently owned by Google.  OptiMorphix

takes three approaches—identifying citations to the asserted patent, the corresponding publication, or a family member—none of which provides a legally sufficient basis to allege Google's knowledge of the asserted patents.  Within each category, the individual citations are even more attenuated, including citations in long lists of prior art, citations by the examiner (not Google), and citations made during prosecution prior to Google's acquisition of the later-issued patents.

As courts in this and other districts have found, "allegations that a defendant cited or referenced a patent during prosecution are generally not sufficient" for pre-suit knowledge. *Princeton Digital*, 2017 WL 6337188, at *1; *see also Spherix Inc. v. Juniper Networks, Inc.*, C.A. No. 14-578-SLR, 2015 WL 1517509, at *2-3 (D. Del. Mar. 31, 2015); *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1-18-CV-309-LY, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018) (similar). For the '273, '418, '314, '559, '285, and '904 patents, this is (at best) all that OptiMorphix alleges. Compl. ¶¶ 146, 174, 201, 253, 328, 354.  But in many of the identified applications, the asserted patent was not even cited by Google itself but was, instead, listed by the examiner.  *E.g.*, U.S. Patent Appl. No. 2020/0412658, U.S. Patent No. 10,999,206 (*id.* ¶ 146); U.S. Patent No. 7,743,003 (*id.* ¶ 201).  This is insufficient to show "that the patent was 'called to the attention' of defendant." *Spherix*, 2015 WL 1517509, at *2-3; *cf. Princeton Digital*, 2017 WL 6337188, at *1 (referring to defendant's own citations).   For others, the prosecution of the identified applications was undertaken by another entity; Google acquired those applications after (often years after) issuance. *E.g.*, U.S. Patent No. 8,897,753 (*id.* ¶ 253); U.S. Patent No. 8,640,174 (*id.* ¶ 253).  Google's later acquisition of eventually-issued patents does not (and cannot) demonstrate Google's knowledge of the asserted patents cited during prosecution thereof.  *Robocast*, 640 F. Supp. 3d at 371-72 (rejecting theories of pre-suit knowledge based on "imputation" and licensing patents with citations to the asserted patents); *Apeldyn Corp. v. AU Optronics Corp.*, 831 F. Supp. 2d 817,

830-31 (D. Del. 2011) (rejecting a "transitive knowledge" theory based on a later license).

For the remaining patents, OptiMorphix alleges pre-suit knowledge of the patents based on citations not to the asserted patents themselves, but to their applications or unspecified family members. For the '871 and '167 patents, the complaint alleges knowledge based only on citations to their applications and not to the actual patents by their issued numbers. Compl. ¶¶ 225, 277. As other courts in this district have found, "[k]nowledge of a patent application alone, however, is not enough to establish knowledge of the patent(s) that issued." *iFIT Inc. v. Peloton Interactive, Inc.*, C.A. No. 21-507-RGA, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)); *see also NNCrystal U.S. Corp. v. Nanosys, Inc.*, C.A. No. 19-1307-RGA, 2022 WL 1091283, at *1 (D. Del. Apr. 12, 2022) (similar). Even taken as true, OptiMorphix's allegations cannot establish knowledge of the asserted patents.

Lastly, for the '664, '105, and '141 patents, the complaint alleges knowledge based only on citations to patents in the same family as the asserted patents—yet another step removed from Google's knowledge of the asserted patents.[4] Compl. ¶¶ 305, 381, 406. OptiMorphix does not (and cannot) allege that Google "had some fairly detailed, specific discussions" about these other patents from the same family as the asserted patents as it would need to do to rely on the family member patents for notice. *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, C.A. No. 14-430-LPS-CJB, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015); *see also Princeton Digital Image Corp. v. Ubisoft Ent. SA*, C.A. No. 13-335-LPS-CJB, 2016 WL 6594076, at *8 (D. Del. Nov. 4, 2016*), report and recommendation adopted*, 2017 WL 6337188 (D. Del. Dec. 12, 2017) (finding no notice based on family member patents where there was not "any real level of

---

[4] OptiMorphix also alleges knowledge based on citation to family members for the '273, '314, '167, '285, and '904 patents for which OptiMorphix also alleges knowledge based on citations to the patents themselves. Compl. ¶¶ 147, 202, 278, 329, 355.

engagement" with those patents).

Compounding these deficiencies, OptiMorphix's citations to applications and family members include citations made during the prosecution of applications Google acquired years later (*e.g.*, U.S. Patent App. Nos. 2010/0306373 and 2013/0311670 (Compl. ¶¶ 305, 329, 355, 381, 406)), and citations provided by the examiner, not the applicant (*e.g.*, U.S. Patent Nos. 9,166,864; 9,948,708; and 8,538,979; U.S. Patent Appl. No. 2014/0074988 (Compl. ¶¶ 225, 305, 329, 355, 381, 406); U.S. Patent Nos. 9,323,731; 9,665,617; 10,943,055 (Compl. ¶ 278)).

Finally, the complaint separately alleges that the patents-in-suit are "importan[t]" to their respective fields and "well-known in the industry." Compl. ¶¶ 9, 27, 33, 40, 47, 55, 61, 69, 77, 84, 93, 99, 106, 113, 121, 149, 176, 204, 227, 255, 280, 307, 331, 357, 383, 408, 434, 460, 485. The only support for these conclusory allegations is further generic references to citations of the patents and their unspecified family members by various companies. *Id.* Regardless, that a patent and the related technology "were well-known in the [] industry cannot, by itself, support an inference [of] pre-suit knowledge." *PPG Indus. Ohio, Inc. v. Axalta Coating Sys., LLC*, C.A. No. 21-346-LPS-SRF, 2022 WL 610740, at *4-5 (D. Del. Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 611260 (D. Del. Feb. 18, 2022).

Even when considered as a whole and taken as true, these allegations do not set forth a sufficient factual basis for pre-suit knowledge of the asserted patents. For this independent reason, OptiMorphix's claims of induced and willful infringement should be dismissed.

### 2. OptiMorphix Fails to Plausibly Allege Google Specifically Intended to Induce Infringement

To maintain a claim for induced infringement, OptiMorphix "must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement." *Lifetime Indus.*, 869 F.3d at 1389

(internal citations and quotations omitted).  OptiMorphix again relies on conclusory allegations nearly identical to those found insufficient by courts in this district.  As in *Dynamic Data*, the complaint alleges that Google "was aware pre-suit that the 'normal and customary use of the accused products would infringe'" without "articulat[ing] why."  *Dynamic Data Techs. v. Google LLC*, C.A. No. 19-1529-CFC, 2020 WL 1285852, at *2 (D. Del. Mar. 18, 2020)*, report and recommendation adopted*, 2020 WL 3103786 (D. Del. June 11, 2020).  OptiMorphix also alleges, without any factual support, that Google "was willfully blind."  *Malvern*, 2021 WL 3856145, at *4 (finding allegations of willful blindness insufficient for pre-suit knowledge where the complaint "does not allege any direct actions taken by [the defendant]").

Apart from these conclusory allegations, OptiMorphix merely identifies "documentation and training materials" in the form of how-to guides, support pages, and blog posts.  Compl. ¶¶ 148, 175, 203, 226, 254, 279, 306, 330, 356, 382, 407, 433, 459.  This Court has found similar allegations insufficient, for example, dismissing inducement claims where the complaint "generically" cited "marketing materials, brochures, [and] product manuals" without "identify[ing] any particular statement or material that plausibly suggests Defendants intend to induce infringement[.]"  *DoDots*, 2018 WL 6629709, at *4; *see also IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*, C.A. No. 16-134-GMS, 2017 WL 1312942, at *4 (D. Del. Apr. 5, 2017) (dismissing inducement where the complaint "only provides examples of webpages" but "fails to allege facts supporting how [defendant] specifically instructed or directed customers").  For this reason as well, OptiMorphix's claims of induced infringement should be dismissed.

### 3.   OptiMorphix Fails to Plausibly Allege Google Had Knowledge of Infringement or Intent to Infringe

OptiMorphix's deficient allegations regarding knowledge of the patents do not (and cannot) satisfy the separate element of willful infringement claims:  knowledge of infringement or

intent to infringe. *Robocast, Inc. v. YouTube, LLC*, C.A. No. 22-304-RGA, 2022 WL 16922035, at *4 (D. Del. Nov. 14, 2022) ("knowledge of the patent does not establish knowledge of infringement"). OptiMorphix fails to allege any factual basis regarding knowledge of infringement, much less any "deliberate or intentional infringement." *E.g.*, *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021). Instead, OptiMorphix merely recites the legal standard for enhanced damages, and tacks on that the infringement is "best described as willful." *Compare* Compl. ¶¶ 149, 176, 204, 227, 255, 280, 307, 331, 357, 383, 408, 434, 460, *with Halo*, 579 U.S. at 103. This warrants dismissal of OptiMorphix's claims of willfulness. *Malvern*, 2021 WL 3856145, at *3; *Boston Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 492, 495 (D. Del. 2019) (granting motion to dismiss willfulness allegations where patentee "has not alleged any facts showing that [the defendant] knew that its [accused products] infringe" and "merely states" that the infringement "is reckless, knowing, deliberate, and willful").

Additionally, OptiMorphix's reliance on the complaint for knowledge of the '388, '169, and '021 patents, and any infringement thereof, is insufficient to allege willfulness. *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 257, 251 (D. Del. 2021); *Wrinkl, Inc. v. Facebook, Inc.*, C.A. No. 20-cv-1345-RGA, 2021 WL 4477022, at *7-8 (D. Del. Sept. 30, 2021) ("Willful patent infringement is the rare exception, not the rule . . . But if all that is required is the filing of a complaint and a plausible allegation of infringement, then every case would be a willful infringement case.").

## VI.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the complaint be dismissed because OptiMorphix fails to state a claim for which relief may be granted.

OF COUNSEL:

Douglas E. Lumish
Linfong Tzeng
LATHAM & WATKINS LLP
140 Scott Drive
Silicon Valley, CA  94025
(650) 328-4600

Patricia Young
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Rachel Weiner Cohen
Sami K. Al-Marzoog
Ashley N. Finger
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C., 20004
(202) 637-2200

Amit Makker
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

January 8, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 8, 2024, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                    *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiff*

Dorian Berger, Esquire                                           *VIA ELECTRONIC MAIL*
Daniel Hipskind, Esquire
Erin McCracken, Esquire
BERGER & HIPSKIND LLP
9538 Brighton Way, Suite 320
Beverly Hills, CA  90210
*Attorneys for Plaintiff*

/s/ *Brian P. Egan*
_____
Brian P. Egan (#6227)